## Walker v. Commonwealth.

(Decided December 15, 1922.)

### Appeal from Bell Circuit Court.

1. Criminal Law—Evidence of Deceased Witness on Former Trial.—The testimony of a deceased witness, given on a former trial of the same case, may be proved by one who was present and heard it, and it is not necessary that the proof show the exact language used by the witness. But it is essential to the admissibility of such testimony that the person called on to prove it be able to state the substance of the whole of the witness's testimony on the particular point he is called to prove.

2. Criminal Law—Evidence of Deceased Witness.—Held, in this case, that the testimony of a witness called to prove the evidence of a

deceased witness, given on a former trial, should not have been received in evidence since it did not purport to include the substance of the whole of what the deceased witness had said, but only such part of it as the witness testifying had remembered.

JOHN HOWARD and W. T. DAVIS for appellant.

CHAS. I. DAWSON, Attorney General, and MARTIN Y. KELLEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

Appellant, Rhoda Walker, was convicted in the Bell circuit court, at its June term, 1922, of the murder of Fred Arnim, and her punishment fixed at confinement in the state penitentiary for life. From that judgment of conviction she has appealed to this court.

Appellant and her husband occupied the lower floor of a small two-story building in Middlesboro, and deceased lived in a room in the second story. The principal witnesses for the Commonwealth were twin brothers, about ten years of age, who resided with their mother in a part of the second story of the building, and who, at the time of the killing, were playing on the upstairs porch in front of their door. They testified that on the morning of the killing appellant called deceased, telling him that she had something for him; that she was standing on the steps and, when deceased approached her, said: "You and old Miss Owens have been talking about me;" that the deceased denied that Mrs. Owens had ever spoken a word of harm about appellant, and said to her: "You have drew the butcher knife and hatchet and now it is this thing," and further "If you have got it in your heart to kill me, you will have to kill me;" that appellant then shot the deceased, who turned and walked a few steps into the yard and fell dead.

Appellant denied that she called Arnim, but said that she had gone to the door of her room to clean a comb and was standing there when he appeared and "welled his eyes and gritted his teeth, and he knocked me down back against the floor and struck me and my little girl commenced screaming . . . and I went and got my gun and went to the door and leaned against the door facing, and he was standing there, and he said, 'You be quiet or I will knock the life out of you,' and, as he started striking me the last time, I shot him." She

was corroborated by her young daughter who was in the room.

In addition to the foregoing testimony, Lewis De-Busk was called for the prosecution and was permitted to testify, over the objection of appellant, as to what Mrs. Hattie Owens, mother of the two prosecuting witnesses, had said on the examining trial of the accused in the county court. Hattie Owens was dead. The witness, DeBusk, testified that he was present at the examining trial and heard her testimony then given, and that the defendant was also present at the trial and was afforded an opportunity of cross-examining the deceased witness. DeBusk was asked if he could give to the jury the substance of the testimony of Hattie Owens on the examining trial. After stating that she swore in substance to what appeared in her affidavit, which he evidently had, he was again asked if he could give, from memory, the substance of her testimony. He did not answer the question affirmatively, but proceeded to say that she testified, in substance, that on the morning of the killing she heard Mrs. Walker call Arnim and tell him that she had something for him. He detailed other parts that he remembered of the testimony of Mrs. Owens, and reported her movements in going out on the porch, but said that he did not remember any detail, or "just what was said about what she saw there." He quoted her as saying, in substance, that she heard the accused say something about one more that she wanted to get, or that she wanted to get "old Miss Owens," or something to that effect, immediately after the shot was fired, and then reiterated, "I don't remember all she did say." Being asked if that was all he remembered, and also if the deceased witness had said she heard Arnim say anything to Mrs. Walker about any previous conduct towards him, he replied: "I don't remember what she said about that; she said something, but I don't remember."

It is earnestly argued that the admission of this testimony was erroneous and prejudicial. It is our opinion that the contention is sound. The witness did not recollect everything that Mrs. Owens said or even the substance of all that she said in her testimony at the examining trial. He remembered that she gave some testimony about hearing the deceased say something to Mrs.

Walker in regard to her previous conduct toward him, but did not remember what it was. The statement of Mrs. Owens on that very point might have been of the utmost importance to the accused, since it is conceivable that the deceased did say something to her which, if it did not justify the shooting, might have been of such an insulting character as to have enraged her or as to have amounted to an extenuation in the minds of the jury.

Formerly it was the rule that the testimony of a deceased witness given on a former trial of the same case could not be proven by one who was present and heard it unless he could state the exact language used by the witness. But the better doctrine, according to later decisions, is that the testimony is admissible if the witness purporting to give it can state the whole substance of what was sworn to, although he may not be able to give the exact words. 10 R. C. L. p. 971; 22 C. J. 438. The modification recognizes the fact that this character of evidence would be entirely lost if the witnesses proposing to prove it were limited to the exact language used. Hence it is held that the substance of the testimony may be given. It is essential, however, that the person called to give the testimony of the deceased witness must be able to state the substance of the whole of the latter's testimony on the particular subject he is called to prove. The unanimity with which this rule is applied may be observed from the authorities cited in the note to Atchison, etc., R. R. Co. v. Osborn, 91 Am. St. Rep. 189.

Considering the evidence complained of here in the light of this rule, it is our conclusion that it was inadmissible, for, as we have remarked, on several material points the witness was asked as to what Hattie Owens testified, and confessed that he was unable to remember her statements on those points, although she did make some statement with reference to them. The effect of his testimony was to give to the jury the substance of a part of the evidence of Hattie Owens, that is, such part as he recollected and necessarily, therefore, only such parts as had impressed his memory. In view of his inability to report the substance of all she said on every subject germane to the inquiry, his testimony should not have been admitted. That it was prejudicial is too plain for argument. The two theories were almost evenly balanced in supporting evidence. His testimony brought

to the jury corroboration of certain features developed
in the testimony of the prosecuting witnesses. Its po-
tential influence is too apparent not to declare its ad-
mission prejudicial.

For this reason the judgment is reversed and the
cause remanded for further proceedings consistent with
this opinion.